**AMERICAN SOCIETY OF ASSOCIATION EXECUTIVES, et al., Plaintiffs,**

v.

**Lloyd H. BENTSEN, Secretary of the Treasury, et al., Defendants.**

**Civ. A. No. 93–2661.**

United States District Court, District of Columbia.

April 14, 1994.

---

246

David William Ogden, Bruce J. Ennis, Jr., Jenner & Block, Washington, DC, for plaintiffs.

David B. Blair, U.S. Attorney's Office, Washington, DC, Donald J. Gavin, U.S. Dept. of Justice, Washington, DC, for defendants.

Arthur Barry Spitzer, American Civil Liberties Union, Washington, DC, for American Civil Liberties Union of the Nat. Capital Area amicus curiae.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This matter is before the Court on defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b). Defendants, Lloyd H. Bentsen, Secretary of the Treasury, Margaret M. Richardson, Commissioner of the Internal Revenue Service, and the United States of America, (the "United States"), assert as grounds for dismissal that this Court lacks subject matter jurisdiction over this action. As the Court finds no statutory basis for maintaining jurisdiction over this action, the United States' motion will be granted.

This lawsuit is a challenge to the constitutionality of recently enacted provisions of the Internal Revenue Code ("Code") that have an impact on associations that engage in lobbying activities on behalf of their members. Plaintiffs, eleven trade associations and professional societies, seek a declaratory judgment that the Code provisions are unconstitutional and an injunction preventing the Internal Revenue Service ("IRS") from assessing or collecting taxes pursuant to those provisions. The challenged Code provisions, codified at 26 U.S.C. §§ 162(e)(3), 162(e)(5)(C), and 6033(e), were enacted by section 13222 of the Omnibus Budget Reconciliation Act of 1993 (H.R. 2264, 103d Cong., 1st Sess. (1993)) (the "Act").

Prior to passage of the Act, section 162(e) of the Code allowed businesses to deduct direct lobbying expenses as business expenses. The Act amended the Code to withdraw the deduction for lobbying expenses incurred by businesses. It did not withdraw the charitable deduction. The Act also contains provisions specifically aimed at enforcing Congress' mandate against certain tax-exempt membership organizations that engage in lobbying. Those tax-exempt organizations previously had been able to deduct their lobbying expenses while their members could deduct their membership dues. Congress concluded that allowing such tax-exempt organizations to deduct their lobbying

expenses amounted to a government subsidy of their lobbying activities.

In addition to withdrawing the tax deduction, the Act also includes provisions designed to prevent the affected taxpayers from skirting Congress' intent. These "enforcement provisions" include the "flow through rule," the "allocation provision" and the "proxy tax." The flow through provision provides:

> No deduction shall be allowed under subsection (a) for the portion of dues or other similar amounts paid by the taxpayer to an organization which is exempt from tax under this subtitle which the organization notifies the taxpayer under section 6033(e)(1)(A)(ii) is allocable to expenditures to which paragraph (1) applies.

26 U.S.C. § 162(e)(3). This provision was designed to prevent taxpayers who use tax-exempt associations to lobby on their behalf from retaining a tax subsidy for their lobbying activities through the tax-deductible dues paid to such associations. Thus, lobbying expenses not otherwise deductible cannot be made deductible merely by conducting lobbying through a tax-exempt association. A member of such an association may not deduct that portion of the dues paid which is attributable to the association's lobbying expenses.

The reporting requirements of section 6033(e)(1) work in conjunction with the flow through provision. Section 6033(e)(1) requires tax-exempt organizations to include on their annual tax returns the total amount of their lobbying expenses and the total amount of dues allocable to lobbying. 26 U.S.C. § 6033(e)(1)(A)(i). The organizations also are required under the section to notify their members of the non-deductible portion of the members' dues. 26 U.S.C. § 6033(e)(1)(A)(ii).

The section also adds an "allocation provision" designed to prevent taxpayers from evading the withdrawal of the tax deduction for lobbying expenses. The provision requires that when calculating the percentage of dues attributable to lobbying, the association must treat the lobbying expenses as having been funded first by membership dues rather than from some other form of income. The provision states as follows:

> For the purposes of this paragraph—
>
> (i) In General—Expenditures to which section 162(e) applies shall be treated as paid out of dues or other similar amounts to the extent thereof.
>
> (ii) Carryover of Lobbying Expenditures in Excess of Dues—If expenditures to which section 162(e)(1) applies exceed the dues or other similar amounts for any taxable year, such excess shall be treated as expenditures to which section 162(e)(1) applies which are paid or incurred by the organization in the following year.

26 U.S.C. § 6033(e)(1)(C). This provision is justified on the basis that a restriction is necessary to avoid skirting Congress' intent. It is argued that without the rule, taxpayers could claim deductions for dues paid to tax-exempt organizations that engage in lobbying, with the organization allocating its lobbying expenses to non-dues income, which may be tax-exempt.

Section 6033(e)(2) also gives tax-exempt associations the option of 1) placing the burden and responsibility of complying with the restriction on their members through a reporting requirement, or 2) paying the tax themselves in the form of a "proxy tax," which would not interfere with the members' right to deduct membership dues. The pertinent parts of section 6033(e)(2) provide:

> If an organization—
>
> (i) elects not to provide the notices described in paragraph (1)(A) for any taxable year, or
>
> (ii) fails to include in such notices the amount allocable to expenditures to which section 162(e)(1) applies (determined on the basis of actual amounts rather than the reasonable estimates under paragraph (1)(A)(i)),
>
> then there is hereby imposed on such organization for such taxable year a tax in the amount equal to the product of the highest rate of tax imposed by section 11 for the taxable year and the aggregate amount not included in such notices by reason of such election or failure.

26 U.S.C. § 6033(e)(2). As drafted, the notification provision and the proxy tax work in conjunction to further the IRS's goal of enforcing the withdrawal of the business deduction for lobbying expenses. Affected associations have the option of reporting to their members the non-deductible portion of their dues, or if such reporting imposes too heavy a financial burden, paying the tax through the "proxy" provision.

The enforcement provisions apply only to *tax-exempt organizations and their members.* See 26 U.S.C. §§ 162(e)(3), 6033(e)(1)(B)(i). The plaintiffs do not challenge the constitutional power of Congress to withdraw tax-exempt status. Nor do they attack the portions of the Act that apply to individual businesses. Specifically, they contend that the enforcement provisions, as applied to tax-exempt organizations, are unconstitutional because they impermissibly hinder the exercise of their First Amendment rights and violate their Fifth Amendment rights of equal protection.

The plaintiffs' constitutional argument is that the enforcement provisions actually impose affirmative financial burdens on tax-exempt associations and their members that engage in lobbying. Such burdens, it is argued, unlawfully penalize and deter plaintiffs from exercising their constitutional rights to freedom of expression and association and to petition the government guaranteed by the First Amendment. They claim that the enforcement provisions also violate the equal protection clause by favoring individual businesses and private individuals over associations. The plaintiffs fear that if the Act is enforced, associations will limit their lobbying activities and membership in those associations will decline. Plaintiffs ask this Court to enjoin enforcement of the Act to prevent irreparable injury to the associations, their members, and the public debate.

■ The United States asserts that this action should be dismissed for lack of subject matter jurisdiction. It is well settled that federal courts are courts of limited jurisdiction. Subject matter jurisdiction is conferred only by the Constitution and by act of Congress. In order to come before a federal court, a litigant must satisfy all applicable jurisdictional requirements.

The question remains whether plaintiffs have met the statutory requirements that would allow them to bring this suit in this Court. The United States' jurisdictional argument is grounded on two statutes which it claims expressly bar plaintiffs from bringing a suit of this type. While acknowledging the existence and validity of the statutes, plaintiffs claim that this case fits within court-created exceptions to the statutes, therefore, this Court properly has jurisdiction over this matter.

The Anti–Injunction Act, 26 U.S.C. § 7421(a) and the Tax Exception to the Declaratory Judgment Act, 28 U.S.C. § 2201, deprive United States District Courts of jurisdiction over certain tax claims. The Declaratory Judgment act provides:

> in a case of actual controversy within its jurisdiction, except with respect to Federal taxes ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201. The Anti–Injunction Act provides that "no suit for the purposes of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a).[1]

There are, however, two recognized exceptions to the Anti–Injunction Act. In *Enoch's v. Williams Packing & Navigation Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962) (hereinafter *Williams Packing* ), the Supreme Court established a two-part test for determining whether an action for injunctive relief could proceed notwithstanding the

---

1. The Court of Appeals for the District of Columbia has held that the Anti–Injunction act and the Declaratory Judgment Act are co-terminous. *See "Americans United" Inc. v. Walters,* 477 F.2d 1169, 1176 (D.C.Cir.1973) *rev'd on other grounds,* *sub nom. Alexander v. "Americans United" Inc.,* 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974). Therefore, both statutes are hereinafter collectively referred to as the "Anti–Injunction Act."

Anti–Injunction Act. First, the plaintiff must show that "under no circumstances could the Government ultimately prevail." *Id.* at 7, 82 S.Ct. at 1129. The court, in considering this prong, must give the most liberal interpretation of the law and facts in favor of the United States. *Id.* Second, the plaintiff must show that "equity jurisdiction otherwise exists." *Id.* If the plaintiff fails to establish both prongs under the *Williams Packing* test, the suit must be dismissed for lack of subject matter jurisdiction. *Church of Scientology of Cal. v. United States*, 920 F.2d 1481, 1486 (9th Cir.1990) (citing *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 758, 94 S.Ct. 2053, 2057, 40 L.Ed.2d 518 (1974)).

The second exception to the Anti–Injunction Act allows a plaintiff to bring a suit against the United States seeking injunctive relief if the plaintiff has no alternative legal remedy. *South Carolina v. Regan*, 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984). Under the *South Carolina* exception, the Supreme Court allowed a state to challenge the constitutionality of a provision in the Code because the state could not bring a tax refund action but would be adversely affected by the provision. *Id.* at 378–80, 104 S.Ct. at 1114–15.

■■■ The Supreme Court in *Bob Jones Univ. v. Simon*, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), stated that its "unanimous opinion in *Williams Packing* indicates that the case was meant to be the capstone to judicial construction of the [Anti–Injunction] Act." *Id.* at 742, 94 S.Ct. at 2048. The plaintiffs bear the burden under the first prong of the *Williams Packing* test to show that they are certain to prevail on the merits of their legal argument. In this case, despite forceful arguments in support of their position, the plaintiffs have not borne that burden. Upon close examination of this case it becomes obvious that this is less an instance of penalizing the exercise of a fundamental right than a case of Congress deciding not to subsidize the exercise of that right. The United States is not obligated to subsidize any person's lobbying.

The Act is not a restriction on the content of speech. The Act does not discriminate against plaintiffs if they seek to influence legislation; the Act simply advances Congress' purpose that such speech not be paid for with pre-tax dollars. Neither does the Act single out particular ideas. The principal change to the lobbying landscape wrought by the Act is that speech aimed at effecting legislative change—lobbying—must now be paid for with after tax money. Sections 162(e) and 6033(e) do not discriminate on the basis of content of speech, therefore they do not implicate the First Amendment.

With respect to the plaintiffs' equal protection argument, the relevant case law suggests that tax statutes such as section 162(e) and 6033(e) should be examined under the rational basis test. *See Regan v. Taxation with Representation*, 461 U.S. 540, 547, 103 S.Ct. 1997, 2001, 76 L.Ed.2d 129 (1983). The Act is rationally related to Congress' intent to eliminate a tax subsidy for lobbying expenses. Fairly read, the enforcement provisions are a means to that end. This Court need not delve into the myriad hypothetical situations that allegedly work mischief on the plaintiffs, as a statute cannot anticipate and address every possible factual situation. It is clear that without some enforcement mechanism, it would be difficult to ensure that taxpayers comply with the withdrawal of the lobbying expense deduction. The Act, therefore, is rationally related to raising revenue and closing a potential loophole in the tax laws.

■■ Under the second prong of the *Williams Packing* test, the plaintiffs must show that denial of an injunction will cause them irreparable harm and that they have no adequate remedy at law. "*Americans United*", 416 U.S. at 762, 94 S.Ct. at 2059. Plaintiffs have not made such a showing. A plaintiff's First Amendment rights are not implicated by a Congressional requirement that its lobbying expenses may not be paid for in part by a tax subsidy. *See Taxation With Representation*, 461 U.S. at 550, 103 S.Ct. at 2003; *Cammarano v. U.S.*, 358 U.S. 498, 513, 79 S.Ct. 524, 533, 3 L.Ed.2d 462 (1959). In addition, the Supreme Court has stated that an anticipated reduction in income through contributions or dues pending the outcome of a refund suit does not suffice as irreparable

injury under the *Williams Packing* analysis. *"Americans United"*, 416 U.S. at 761–763, 94 S.Ct. at 2058–2059.

The plaintiffs' complaint also fails to meet the second prong of the *Williams Packing* test because they have available alternative legal remedies. The plaintiffs have the opportunity to obtain appropriate judicial review of their claims. First, if they elect not to pay the applicable taxes, the plaintiffs, as individual taxpayers, may challenge the requirements of sections 162(e) and 6033(e) by bringing a subsequent suit in the United States Tax Court challenging any tax delinquency with which they may be assessed. *See* 26 U.S.C. § 6213. Second, the plaintiffs may elect to pay the taxes then bring a tax refund action in the United States District Court or the United States Court of Federal Claims. *See* 26 U.S.C. § 7422.

Plaintiffs assert that they have no alternative remedy to challenge the notification provisions of section 6033(e)(1)(A)(ii) because if the associations comply, their members will have no legal remedy. As was represented to the Court during the hearing on this motion, the associations could refuse to notify their members which would result in a proxy tax liability. At that point, the plaintiffs could obtain a judicial hearing before the Tax Court, the district courts or the Court of Federal Claims. "A taxpayer cannot render an available review procedure an inadequate remedy at law by voluntarily forgoing it." *"Americans United"*, 416 U.S. at 762 n. 13, 94 S.Ct. at 2059 n. 13.

The plaintiffs' assertion that this case fits the *South Carolina* exception to the Anti-Injunction Act similarly lacks merit. The exception created by the Supreme Court in *South Carolina* is a narrow one tailored to the unique factual pattern in that case. *See Spencer v. Brady*, 700 F.Supp. 601, 604 (D.D.C.1988). Plaintiffs' attempt to invoke this exception fails because, unlike the plaintiff in *South Carolina*, they have alternative legal remedies. *See, e.g., Williams Packing*, 370 U.S. at 6, 82 S.Ct. at 1128.

Although the Court concludes that this case must be dismissed, the Court does not necessarily agree with the manner in which Congress has drafted this legislation or the IRS has determined to implement it. The court believes that the plaintiffs may well have made an effective case that the Act and the way the IRS intends to administer it produce unfair results. The allocation provision is obviously geared toward putting a specific and unique "bite" on tax-exempt organizations. It is not necessary to enforce the withdrawal of the business deduction for lobbying expenses and it seems that there ought to be a more direct approach to accomplish Congress' intent. Having expressed these views, the Court's opinion that this case must be dismissed stands.

### ORDER

Upon consideration of the defendants' Motion to Dismiss the complaint and the opposition thereto, it is this 14th day of April 1994

ORDERED that the plaintiff's complaint is hereby dismissed for lack of subject matter jurisdiction.